UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEFFREY SPESOCK, et al.,<br><br>Plaintiffs,<br>v.<br><br>U.S. BANK, N.A., et al.,<br><br>Defendants. | CASE NO. C18-0092JLR<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

Before the court are the parties' cross motions for summary judgment: (1) Plaintiffs Jeffrey Spesock and Janet Spesock's ("the Spesocks") motion for summary judgment (Plf. MSJ (Dkt. # 18)); and (2) Defendant U.S. Bank N.A., successor trustee to Bank of America N.A., successor in interest to LaSalle Bank N.A., as trustee for Washington Mutual Mortgage Pass-Through Certificate WMALT Series 2006-AR4 Trust's ("the Trust") cross motion for summary judgment (Def. MSJ (Dkt. # 21)). The court has considered the motions, all submissions filed in support of and opposition to the

motions, the applicable law, and the relevant portions of the record. Being fully advised,[1] the court DENIES the Spesocks' motion and GRANTS the Trust's motion.

## II.     BACKGROUND

On or about February 27, 2006, Mr. Spesock executed a promissory note in the original sum of $840,000.00 ("the Note"). (Hoisington Decl. (Dkt. # 22) ¶ 2, Ex. A; *see* 4/6/18 Spesock Decl. (Dkt. # 19) ¶ 3.[2]) The Note was secured by a deed of trust encumbering real property commonly known as 1301 Mukilteo Lane, Mukilteo, Washington 98275, located in Snohomish County, Washington ("the Property") and signed by the Spesocks ("the Deed of Trust"). (Hoisington Decl ¶ 3, Ex. B; 4/6/18 Spesock Decl. ¶ 3.) The Note was endorsed by the original lender, Fremont Investment & Loan, to Residential Funding Corporation, which in turn executed an allonge endorsing the Note in blank. (Hoisington Decl. ¶ 2, Ex. A.) The Trust now holds the endorsed-in-blank Note. (*See id.*; *see also* Def. MSJ at 2.)

In July 2008, the Spesocks defaulted on the Note and Deed of Trust by failing to make payments on the Note as they came due. (Hoisington Decl. ¶ 5.) The Spesocks filed for bankruptcy on March 18, 2009. (4/6/18 Spesock Decl. ¶ 4.) On October 15, 2009, the bankruptcy court granted the Spesocks a Chapter 7 discharge that allegedly

---

[1] No party asked for oral argument on either motion (*see* Plf. MSJ at 1; Def. MSJ at 1), and the court determines that oral argument would not assist its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Paragraph 3 of Mr. Spesock's April 6, 2018, declaration is unnumbered, but follows numbered paragraph two, precedes numbered paragraph four, and appears on page three of the declaration. (*See* 4/6/18 Spesock Decl. at 3.)

covers the Note at issue here.[3] (*See id.* ¶ 4, Ex. E.) The Spesocks admit that even if their personal liability to pay on the Note was discharged in bankruptcy, the Trust can still validly enforce the Note "*in rem*" by foreclosing under the Deed of Trust related to the Property. (*See* Plf. MSJ at 6 ("The discharge . . . did not affect the Defendants' right to enforce the Deed of Trust in-rem [sic].").)

JPMorgan Chase Bank ("Chase") was the servicer of the Spesocks' Note after their bankruptcy. (Hoisington Decl. ¶ 5.) Chase made numerous attempts to foreclose on the Property after the October 15, 2009, bankruptcy discharge. (*Id.* ¶¶ 8-15.) Chase set dates for four different foreclosure sales of the Property, including January 4, 2010, February 5, 2010, March 19, 2010, and April 30, 2010. (*Id.* ¶¶ 8-11, Exs. E-H; Praecipe (Dkt. # 26) (attaching corrected copy of Ex. H).)

Between April 30, 2010 and February 3, 2011, Chase worked with the Spesocks to gather documents and information to see if they qualified for a loan modification that would allow them to keep the Property. (Hoisington Decl. ¶ 12.) By a letter dated February 10, 2011, Chase ultimately denied the Spesocks' request for a loan modification. (*Id.* ¶ 12, Ex. I.) The Spesocks appealed Chase's denial of a loan modification. (*Id.* ¶ 12.) Chase completed a second level of review and confirmed again that the Spesocks were ineligible for a permanent loan modification. (*Id.* ¶ 12, Ex. J.)

Chase began the foreclosure process again in 2012, by sending the Spesocks both a notice of pre-foreclosure options dated February 16, 2012, and a notice of intent to

---

[3] The Trust concedes that the Note was properly discharged in bankruptcy for purposes of the court's consideration of summary judgment only. (Def. MSJ at 3 n.3.)

foreclose dated March 13, 2012. (*Id.* ¶¶ 13-14, Exs. K, L.) In response, the Spesocks requested another loan modification during this period, which Chase again denied on July 9, 2012, after two-levels of review. (*Id.* ¶ 15, Ex. M.)

Select Portfolio Servicing, Inc. ("SPS") replaced Chase as the servicer of the Note in August 2013. (*Id.* ¶ 16.) On October 1, 2013, SPS sent a notice of default to the Spesocks. (*Id.* ¶ 16, Ex. N.) The notice of default indicated a willingness to work with the Spesocks to avoid foreclosure but explained that foreclosure could happen, "[e]ven though your personal liability on the [N]ote is discharged" through bankruptcy. (*Id.* at 1.) SPS warned that "[t]he owner of the mortgage, as lien holder, continues to have an enforceable lien on the real property," while at the same time explaining that "SPS is committed to home retention and offers many customer assistance programs designed to help customers avoid foreclosure." (*Id.*) SPS went onto state that "[i]f [it] does not receive the [a]mount [r]equired to [c]ure by the [c]ure [d]ate, or if some loss mitigation alternative to foreclosure has not started, SPS may initiate foreclosure" but that if an agreement is reached before that time, "we will not proceed with and/or commence foreclosure, as long as you comply with the agreement and make required payments." (*Id.* at 2.) On June 13, 2014, SPS sent a Notice of Pre-Foreclosure Options to the Spesocks, warning that it would issue a Notice of Default if the Spesocks did not respond within 30 days, as required by the Washington Deed of Trust Act. (*Id.* ¶ 17, Ex. O.) On September 21, 2014, in response to SPS's October 1, 2013, and June 13, 2014, notices, the Spesocks applied for hardship loan assistance. (*Id.* ¶ 18.) The Trust, however, ultimately proceeded with attempting to foreclose on the Property. (*Id.*)

Between December 2014 and December 2016, SPS sent notice of and scheduled five separate foreclosure sales on April 17, 2015, January 8, 2016, September 30, 2016, January 6, 2017, and April 28, 2017. (*Id.* ¶¶ 20-24, Exs. Q-U.) On April 21, 2017, the Spesocks applied for a trial loan modification, which halted the foreclosure sale scheduled for April 28, 2017. (*Id.* ¶ 25.) The Spesocks did not comply with the trial modification payment plan, and it expired on July 2, 2017. (*Id.*)

On July 17, 2017, SPS issued a Notice of Trustee's Sale scheduling a foreclosure sale of the Property on November 17, 2017. (*Id.* ¶ 26, Ex. V.) On November 8, 2017, the Spesocks sent a letter to SPS appealing the decision to deny a loan modification and proceed with foreclosure. (*Id.* ¶ 27, Ex. W.) In response, SPS again cancelled the foreclosure sale and stated an intent to reopen the loan modification process. (*Id.* ¶ 27, Ex. X.)

The Spesocks, however, filed a complaint against Northwest Trustee Services, Inc. ("NWTS") in Snohomish County Superior Court alleging that the Trust had slept on its rights and that the statute of limitations for foreclosing on the Property had expired. (*Id.* ¶ 28.) On November 17, 2017, the state court issued a temporary restraining order ("TRO") on an *ex parte* basis against NWTS enjoining any foreclosure sale. (*Id.* ¶ 28, Ex. Y.) The only entity against whom the state court issued the TRO was NWTS. (*Id.*)

On December 6, 2017, the Spesocks filed a separate suit in Snohomish County Superior Court against the Trust, seeking to quiet title to the property. (*See* Compl. (Dkt. # 1-1).) On January 22, 2018, the Trust removed the action to federal court. (*See* Not. of Removal (Dkt. # 1).) On July 7, 2018, the Spesocks moved for summary judgment

arguing, as they did in state court, that the statute of limitations for enforcing the Deed of Trust has expired. (*See* Plf. MSJ.) The Trust responded and cross moved for summary judgment dismissing all the Spesocks' claims. (*See* Def. MSJ.) The court now considers the parties' motions.

### III. ANALYSIS

The Spesocks assert one claim in their complaint—namely, that they are entitled to quiet title to the Property in their names. (*See generally* Compl.) In their motion for summary judgment, they argue that the statute of limitations for the Trust to enforce the Deed of Trust has expired. (*See* Plf. MSJ; *see also* Compl. ¶¶ 2.7-2.11.) The Trust responds that not only are the Spesocks not entitled to summary judgment on the statute of limitations issue, but the Trust is entitled to summary judgment on this issue instead. (*See* Def. MSJ at 6-11.)

In addition, the Spesocks also allege that they are entitled to quiet title on the Property because the beneficial interest in the Note somehow has been improperly assigned. (*See* Compl. ¶¶ 2.2-2.6.) The Trust moves for summary judgment on this issue, as well. (Def. MSJ at 12-14.) The Spesocks fail to respond. (*See generally* Plf. Resp. (Dkt. # 23).) The court now addresses both the statute of limitations and the assignment issue.

**A.   Standard**

Summary judgment is proper where, viewing the evidence and inferences therefrom in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law, and an issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)). The court "rule[s] on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (internal quotation marks omitted) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998)).

**B.     Statute of Limitations**

  1. <u>Tolling During Foreclosure Proceedings</u>

  "When an action for foreclosure on a deed of trust is barred by the statute of limitations, RCW 7.28.300 authorizes an action to quiet title." *Westar Funding, Inc. v. Sorrels*, 239 P.3d 1109, 1113 (Wash. Ct. App. 2010), *as amended on denial of reconsideration* (Nov. 9, 2010). Specifically, RCW 7.28.300 states:

> The record owner of real estate may maintain an action to quiet title against the lien of a mortgage or deed of trust on the real estate where an action to foreclose such mortgage or deed of trust would be barred by the statute of

limitations, and, upon proof sufficient to satisfy the court, may have judgment quieting title against such a lien.

*Id.* The Washington statute of limitation governing actions on written contracts, like the Deed of Trust at issue here, is six years. *See* RCW 4.16.040. "The statute of limitation does not begin to run until a breach of the contract occurs." *Safeco Ins. Co. v. Barcom*, 773 P.2d 56, 60 (Wash. 1989).

Ordinarily, the statute of limitations on an installment note, like the Note, "runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it." *Edmundson v. Bank of Am.*, 378 P.3d 272, 277 (Wash. 2016) (quoting *Herzog v. Herzog*, 161 P.2d 142, 144-45 (Wash. 1945)). A separate cause of action arises on each installment, and the statute of limitations runs separately against each such installment. *Silvers v. U.S. Bank Nat'l Ass'n*, No. C15-548RJB, 2015 WL 5024173, at *4 (W.D. Wash. Aug. 25, 2015). When a note is discharged in a Chapter 7 bankruptcy, the statute of limitations to enforce the corresponding deed of trust runs from the date the last payment on the note was due prior to the Chapter 7 discharge.[4] *Id.*

The Spesocks received a Chapter 7 discharge on October 15, 2009, which included the Note. (4/6/18 Spesock Decl. ¶ 4, Exs. D, E.) Thus, they argue that they are entitled

---

[4] As the Spesocks admit (*see* Plf. MSJ at 6), the fact that the Note was discharged in bankruptcy did not affect the Trust's ability to foreclose on the Property under the Deed of Trust, *see Creagan v. Nationstar Mortg. LLC*, No. C17-5138 RBL, 2018 WL 4095091, at *2 (W.D. Wash. Aug. 28, 2018) ("Nothing in the Deeds of Trust Act supports the conclusion that the lien of a deed of trust on real property is discharged under state law when the note or other secured obligation is no longer enforceable.").

to summary judgment quieting title to the Property in their names because the Trust did not commence any proceeding to foreclose on the Deed of Trust "within six years of the last due payment or of the [Chapter 7] discharge." (Plf. MSJ at 8.)

The Trust responds that the Spesocks' assertion that "[n]o proceeding to commence foreclosure" was initiated during the statutory period (*id.*) is factually incorrect (*see* Def. MSJ at 6-7). Although the Trust did not complete foreclosure proceedings prior to the Spesocks' present suit, it initiated numerous such proceedings. Indeed, as detailed above, the servicer of the Note set at least 10 different dates for a foreclosure sale of the Property under the Deed of Trust between 2009 and 2017. *See supra* § II.

The Trust further responds that, although the statute of limitations on a Deed of Trust begins to run when the underlying Note is discharged in bankruptcy,[5] Washington courts recognize that the commencement of non-judicial foreclosure proceedings tolls the running of the statutory period. *Bingham v. Lechner*, 45 P.3d 562, 568 (Wash. Ct. App. 2002) (stating that a party's "filing of [non-judicial] foreclosure proceedings . . . tolled the statute of limitations"). Indeed, in their response, the Spesocks acknowledge that "[t]he statute of limitations is tolled by the issuance of [a] Notice of Trustee's Sale." (*See*

---

[5] The Trust asserts that the statute of limitations began to run on the date of the Spesocks' bankruptcy discharge, which is October 15, 2009. (*See* Def. MSJ at 7.) The Spesocks, however, assert that the statutory period began to run from the date that the last payment on the Note was due prior to their Chapter 7 discharge, which was on October 1, 2009. (*See* Plf. Resp. (Dkt. # 23) at 1.) This 14-day discrepancy, however, is immaterial for purposes of the court's consideration of the parties' summary judgment motions on this issue. Accordingly, the court does not decide this issue.

Plf. Resp. at 2.) Washington courts similarly recognize that multiple incomplete, non-judicial foreclosure proceedings may be counted together to toll the limitations period. *See Erickson v. Am.'s Wholesale Lender*, No. 77742-4-I, 2018 WL 1792382, at *4 (Wash. Ct. App. Apr. 16, 2018) (combining four notices of trustee's sales to toll the statutoty period for a total of over six years); *Fujita v. Quality Loan Serv. Corp. of Wash.*, No. C16-925-TSZ, 2016 WL 4430464, at *2 (W.D. Wash. Aug. 22, 2016) ("Although the entire debt became due on July 16, 2009, the statute of limitations on [the bank's] ability to foreclose was tolled during the pendency of two Notices of Trustee Sale which were ultimately discontinued.") (citing *Bingham*, 45 P.3d at 566-68).

As detailed in Appendix 1 to the Trust's motion, the Trust commenced and terminated ten separate non-judicial foreclosure proceedings since the Spesocks obtained a bankruptcy discharge on October 15, 2009. (Def. MSJ, App'x 1.) Under Washington law, each of these incomplete non-judicial foreclosures separately tolled the statutory period. *See Fujita*, 2016 WL 4430464, at *2. With the tolling associated with these non-judicial foreclosure proceedings properly calculated, the statute of limitations ran for only 2,004 days (or 5.49 years) before the Spesocks filed their complaint in this action on December 6, 2017.[6] Thus, the court concludes that the Trust acted within the limitations period.

---

[6] The Trust calculates that the statute of limitations ran for 1,918 days (or 5.25 years). (*See* Def. MSJ, App'x 1.) The Trust's calculation, however, includes tolling periods for two notices of pre-foreclosure options, also known as the "initial contact" letter required by RCW 61.24.031(b), which are dated February 16, 2012, and June 13, 2014, respectively. (*See id.* at 16-17.) Case authority supports tolling the limitations period for both a notice of default and a notice of trustee's sale. *See Fujita*, 2016 WL 4430464, at *2 (tolling the limitations period on

2. <u>Notices of Default Tolled the Limitations Period</u>

Although the Spesocks acknowledge that a notice of trustee's sale will toll the running of the statute period, the Spesocks nevertheless argue that a notice of default is not sufficient to toll the statute of limitations. (Plf. Resp. at 2-3 (citing *Fujita*, 2016 WL 4430464, at *2 n.4).) They argue that the court should not include time periods related to notices of default in its calculation of the tolling of the statutory period.[7] (*See id.*)

There is a split of authority on this issue. In *Fujita*, a federal district court concluded that a notice of default is insufficient to toll the statute of limitation and that "the proper tolling point is the issuance of the [n]otice of [t]rustee's [s]ale." *Fujita*, 2016 WL 4430464, at *2 n.4. However, a published Washington Court of Appeals decision ruled that a written notice of default is, in fact, sufficient to trigger tolling of the limitations period under Washington law. *See Edmundson*, 378 P.3d at 277. In *Edmundson*, the court stated that, under RCW 61.24.030(8), a written notice of default "is evidence of resort to the remedies of the Deeds of Trust Act [("the DTA")] for the defaults of the [borrower] . . . ." *Id.* The DTA does not require the lender to file or record the written notice of default. *See* RCW 61.24.030(8). The *Edmundson* court

---

the basis of notice of trustee's sale); *see also Edmundson*, 378 P.3d at 277 (tolling the limitations period on the basis of a written notice of default). Even though an initial contact letter is required by statute, *see* RCW 61.24.031, the Trust did not identify and the court did not locate any authority for tolling the limitations period on the basis of such a letter or notice. The court need not decide this issue, however, because even eliminating the tolling that the Trust attributed to these two notices, the statute of limitations still had not expired by the time the Spesocks filed their complaint herein.

[7] Notably, the Spesocks do not dispute that they received all of the notices of default listed in the Trust's motion. (*See generally* Plf. Resp.)

concluded that such a notice was "all that [wa]s required" to toll the limitations period for the deed of trust at issue. 378 P.3d at 277; *see also Heintz v. U.S. Bank Tr., N.A. for LSF9 Master Participation Tr.*, No. 76297-4-I, 2018 WL 418915, at *3 (Wash. Ct. App. Jan. 16, 2018) (unpublished) ("Service of the written notice of default tolls the statute of limitations until 120 days after the date scheduled for nonjudicial foreclosure of the deed of trust.").[8]

The Washington Supreme Court has not ruled on the sufficiency of a notice of default to toll the statute of limitations for enforcing a deed of trust. In the absence of a Supreme Court decision, the Ninth Circuit instructs this court to look to other lower state-court decisions. *Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir. 1991) ("Decisions by the state courts of appeals provide guidance and instruction and are not to be disregarded in the absence of convincing indications that the state supreme court would hold otherwise."). Accordingly, this court follows *Edmundson* and gives credit to the Trust for tolling the statute of limitations, not only with its various notices of trustee's sales, but also with the various notices of default that the Trust sent to the Spesocks.[9] (*See* Def. MSJ, App'x 1.)

---

[8] "[U]npublished opinions of the [Washington] Court of Appeals filed on or after March 1, 2013, may be cited as non-binding authorities . . . and may be accorded such persuasive value as the court deems appropriate." Wash. G.R. 14.1.

[9] The Spesocks also argue that a notice of trustee's sale does not toll the statute of limitations unless the notice is recorded. (Plf. Resp. at 2-3.) Under the DTA, trustees are instructed to record such notices "in each county in which the deed of trust is recorded." RCW 61.24.040. As the Spesocks point out, there is no evidence that the November 10, 2009, Notice of Trustee's Sale was recorded. (*See* Plf. Resp. at 2; *see* Janet Spesock Decl. ¶ 3, Ex. B; Jeffrey Spesock Decl. ¶ 3, Ex. B; *see generally* Dkt.) The Spesocks provide no authority for their argument that notices of trustee's sale must be recorded to toll the statute of limitations on a deed

### 3. Bankruptcy, Not Acceleration, Triggered the Statute of Limitations

The Spesocks also argue that the Trust or the servicer of the Note may have accelerated the Note prior to the Spesocks' October 15, 2009, bankruptcy, and that such an acceleration would have commenced the running of the statutory period prior to October 15, 2009. (Plf. Resp. at 2.) "Where an obligation that was to be paid in installments is accelerated, then 'the entire remaining balance becomes due and the statute of limitations is triggered for all installments that had not previously become due.'" *Heintz*, 2018 WL 418915, at *2 (quoting *4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 382 P.3d 1, 6 (Wash. Ct. App. 2016)).

The Spesocks, however, have no direct evidence that the Trust ever accelerated their Note. (*See generally* Plf. Resp.) They cite a March 13, 2012, letter from Chase, which states: "If you fail to cure the default within 35 days . . . , Chase will accelerate the maturity of the Loan, . . . and commence foreclosure proceedings without further notice to you." (Janet Spesock Decl. ¶ 2, Ex. A at 2; Jeffrey Spesock Decl. ¶ 2, Ex. A at 2.) Plaintiffs implicitly argue that such a letter automatically accelerates a loan if the default is not cured. (*See* Plf. Resp. at 2.) The Spesocks further argue that they "may" have

---

of trust. (*See generally* Plf. Resp.) Further, they do not dispute that they received all of the notices of default and notices of trustee's sales at issue here. (*See generally id*.) The reason that a notice for trustee's sale must be recorded is "to give notice to the world that a foreclosure sale is scheduled for a specific date." *Leahy v. Quality Loan Serv. Corp. of Wash.*, 359 P.3d 805, 808 (Wash. Ct. App. 2015), *as amended* (Aug. 24, 2016). Yet, in *Edmundson*, notice to the borrower alone that the lender intended to resort to DTA remedies "[wa]s all that [wa]s required" to toll the statutory period. 378 P.3d at 277. The court sees no reason to require proof of recording of a notice of trustee's sale to toll the statute of limitations when the *Edmundson* court concluded that mere service of a notice of default on the borrower would suffice to toll the statutory period and where the Spesocks have not denied receiving the November 10, 2009, Notice of Trustee's Sale at issue here.

received a similar letter prior to their October 15, 2009, bankruptcy, and if so, the statutory period would have begun running earlier than asserted by the Trust. (*See id.*) The Spesocks also point to a notice of trustee's sale recorded on December 17, 2008—prior to their bankruptcy—to support their argument. (Janet Spesock Decl. ¶ 3, Ex. B; Jeffrey Spesock Decl. ¶ 3, Ex. B; Plf. Resp. at 2.) The Spesocks posit that "[d]iscovery *may* reveal additional correspondence . . . indicating that this [N]ote was accelerated . . . prior to October 1, 2009." (Plf. Resp. at 2.)

Although the Spesocks do not cite to Federal Rule of Civil Procedure 56(d), they appear to be making an argument that the court should either deny the Trust's motion for summary judgment or defer ruling on it until the parties have an opportunity to conduct further discovery on the issue of acceleration. *See* Fed. R. Civ. P. 56(d); (Plf. Resp. at 2.) When seeking relief under Rule 56(d), "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (quoting *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)). The Spesocks fail to meet this burden because, as discussed below, even if the facts posited by the Spesocks were true there is no reason for the court to conclude that their Note was accelerated or that the statutory period began running prior to their bankruptcy on October 15, 2009.

First, the fact that the Trust may have initiated non-judicial foreclosure proceedings prior to the Spesocks's bankruptcy does not mean that their Note was accelerated at that time. Washington courts have held that "acceleration does not occur

automatically by invoking the power of sale," and lenders are "not required to accelerate [a] loan in order to pursue a nonjudicial foreclose." *4518 S. 256th, LLC*, 382 P.3d at 11. Thus, the court cannot conclude on the basis of the pre-bankruptcy notice of trustee's sale that the Note was accelerated and the statute of limitations commenced running prior to October 15, 2009.

Second, the receipt of a letter like the March 13, 2012, letter, in and of itself, does not result in the acceleration of a loan—even if default is not cured. Under Washington law, "acceleration must be made in a clear and unequivocal manner which effectively apprises the maker that the holder has exercised his right to accelerate the payment date." *Glassmaker v. Ricard*, 593 P.2d 179, 181 (Wash. Ct. App. 1979). In *Erickson v. America's Wholesale Lender,* No. 77742-4-I, 2018 WL 1792382, at *2 (Wash. Ct. App. Apr. 16, 2018), the Washington Court of Appeals concluded that three notices from the lender stating that the loan "will be accelerated" if the borrower did not cure the default did not result in acceleration. *Id*. The court stated that the notices "simply informed [the borrower] of a future contingent event." *Id.* The Court concluded that the lender could not accelerate the loan without taking some additional affirmative action. *Id.* Likewise, in *Creagan v. Nationstar Mortg. LLC*, No. C17-5138 RBL, 2018 WL 4095091 (W.D. Wash. Aug. 28, 2018), the federal district court examined a letter that was similar to the March 13, 2012, letter here. The letter in *Creagan* provided notice of the lender's intent to accelerate a note in the future contingent on the debtor's failure to cure a default. The court concluded that under Washington law, "[t]he [n]otice coupled with the failure to cure d[id] not together add up to an acceleration as a matter of law." *Id.* at *2. Based on

these authorities, the court concludes that the language in the March 13, 2012, letter at issue here did not result in an acceleration of the Spesocks' Note either.

Third, when the Washington Legislature created the DTA, it altered the common law rules governing remedies such as the acceleration of secured notes known as mortgages, in exchange for a new form of security instrument—the deed of trust—that eases a lender's ability to recover its security interest.[10] In place of the common law concept of acceleration, the DTA mandates that a borrower has the right to reinstate a loan in each non-judicial foreclosure proceeding commenced by a lender. *See* RCW 61.24.090(1) ("At any time prior to the eleventh day before the date set by the trustee for the [non-judicial foreclosure] sale . . . , or in the event the trustee continues the sale pursuant to RCW 61.24.040(6), at any time prior to the eleventh day before the actual sale, the borrower . . . shall be entitled to cause a discontinuance of the sale proceedings by curing the default or defaults set forth in the notice."). The amounts the borrower must pay to reinstate the loan does not include "such portion of the principal as would not then be due had no default occurred"—in other words, any amount due solely as a result of an acceleration following default.[11] *See* RCW 61.24.090(1)(a).

---

[10] *See Rustad Heating & Plumbing Co. v. Waldt*, 588 P.2d 1153, 1154 (Wash. 1979) ("An examination of the legislation creating the statutory deed of trust provided for in RCW 61.24 reveals the act created a security instrument allowing for quicker realization of the security interest. In exchange, the remedies available in conventional mortgages allowing acceleration of the entire debt and deficiency judgments were taken away.").

[11] This right to reinstatement was confirmed in the March 13, 2012, letter that Chase sent to the Spesocks. (Janet Spesock Decl. ¶ 2, Ex. A at 2 ("If permitted by applicable law, you have the right to reinstate after acceleration of the Loan . . . ."); Jeffrey Spesock Decl. ¶ 2, Ex. A at 2 (same).)

Based on these statutory provisions, the Trust argues, and the court agrees, that the borrower's statutory right to reinstatement adheres to each non-judicial foreclosure sale initiated by the lender. *See generally* RCW 61.24.090 (setting forth procedures applicable to all non-judicial foreclosure sales); *see also Erickson*, 2018 WL 1792382, at *3 (stating that three letters warning that a note "will be accelerated" if the borrower does not cure the default did not result in acceleration because the DTA "precludes the creditor from enforcing the election [to accelerate a loan] prior to the eleventh day before the date of the trustee's sale," and the courts "must honor this policy choice") (alteration in original)) (quoting *Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank*, 910 P.2d 1308, 1317 (Wash. Ct. App. 1996)). Thus, if a lender discontinues a non-judicial foreclosure proceeding and then initiates another non-judicial foreclosure process, the borrower's right to reinstatement adheres anew to the subsequent process under RCW 61.24.090. Accordingly, an acceleration does not commence the running of the statutory period when nonjudicial foreclosure proceedings are later discontinued because the parties return to the status quo until such time as the lender initiates another non-judicial foreclosure proceeding. *See, e.g.*, *Tingvall v. U.S. Bank*, No. 75365-7-I, 2017 WL 2335013, at *2, 199 Wash. App. 1011 (Wash. Ct. App. May 30, 2017) (unpublished) (recognizing this argument concerning the statute of limitation and acceleration under the DTA, but deciding the issue on other grounds). Therefore, even if the Spesocks received a letter prior to their October 15, 2009, bankruptcy threatening to accelerate their Note if they did not cure the default, such a letter would not affect the running of the statutory period here.

For all of the reasons stated above, the court concludes that the Spesocks are not entitled to additional discovery on this issue under Rule 56(d). In addition, the court concludes that the statutory period on the Deed of Trust had not run prior to the Spesocks filing of the present complaint.[12] Accordingly, the court denies the Spesocks' motion for summary judgment on the statute of limitations and grants the Trust's motion for summary judgment on the same issue.

**C.     Authority to Foreclose**

The Spesocks appear to assert in their complaint that the Trust did not receive a lawful assignment of an interest in the Note or Deed of Trust. (*See, e.g.*, Compl. ¶ 2.4 ("U.S. Bank . . . did not receive proper assignment from Bank of America NA or LaSalle Bank NA.").) The Trust moves for summary judgment that it is the holder of the Spesocks' Note and Deed of Trust, and as such, is the proper party to conduct a nonjudical foreclosure of the Property. (Def. MSJ at 12-14.) The Spesocks did not respond to this portion of the Trust's cross motion for summary judgment. (*See generally* Plf. Resp.) The court now considers the Trust's motion.

The Note was specially endorsed by the original lender to Residential Funding Corporation, which in turn executed an allonge endorsing the Note in blank. (*See* Hoisington Decl. ¶ 2, Ex. A.) The Trust holds the endorsed-in-blank Note. (*See* Def.

---

[12] The Trust also argues that the statute of limitations should be equitably tolled for an additional 490 days while the servicer of the Note was engaged in processing the Spesocks' various requests for loan modifications. (Def. MSJ at 9-11, 19.) The court does not need to decide this issue because even if the statute of limitations is not equitably tolled it did not expire prior to the filing of the Spesocks' complaint. *See supra* § III.B.

MSJ at 2 n.2 (stating that "[c[ounsel for the Trust has in her possession the original Note and Deed of Trust").) Under Washington law, an instrument endorsed in blank becomes payable to the bearer and may be negotiated. RCW 62A.3-205(b). The holder of such a negotiable instrument is the person in possession and is entitled to enforce it. *Zalac v. CTX Mortg. Corp.*, No. C12-01474 MJP, 2013 WL 1990728, at *3 (W.D. Wash. May 13, 2013), *aff'd*, 628 F. App'x 522 (9th Cir. 2016) (citing RCW 62A.3-301). Here, the Spesocks do not dispute that the Trust is in physical possession of the Note and that it is endorsed in blank. (*See generally* Plf. Resp.) Therefore, the Trust is the holder of the Note as a matter of law.

When the Note was transferred to the Trust, the Spesocks' Deed of Trust was transferred with it by operation of law. Under Washington law, a deed of trust follows the transfer of debt. *See e.g.*, *Am. Sav. Bank & Trust Co. v. Helgesen*, 116 P. 837, 840 (Wash. 1911), *on reh'g*, 122 P. 26 (Wash. 1912) ("There is no doubt that a mortgage, or any other security given for the payment of a bill or note, passes by a transfer of the bill or note to the transferee."). In *Bain v. Metropolitan Mortgage Group, Inc.*, the Washington Supreme Court expressly provided that this maxim extends to the DTA. 285 P.3d 34, 44 (Wash. 2012) ("Washington's [DTA] contemplates the security instrument will follow the note, not the other way around.") Because the Trust is the holder of the Spesocks' Note, the Trust is also the holder of the Deed the Trust as a matter of law and, therefore, entitled to enforce it. Thus, "it follows logically that the noteholder is entitled to enforce both the note and the [deed of trust] by operation of law." *Beck v. U.S. Bank Nat'l Ass'n*, No. C17-0882JLR, 2017 WL 6389330, at *4 (W.D. Wash. Dec. 14, 2017)

(citing *Bavand v. OneWest Bank*, 385 P.3d 233, 248-49 (Wash. Ct. App. 2016), *as modified* (Dec. 15, 2016) ("[The bank's] authority to enforce the note and [DOT] arose by operation of law due to the bank's status as holder of the delinquent note.")). Accordingly, the court also grants the Trust's motion for summary judgment that it has the authority to conduct a non-judicial foreclosure proceeding against the Property based on the Deed of Trust.

## IV.  CONCLUSION

Based on the foregoing analysis, the court DENIES the Spesocks' motion for summary judgment (Dkt. # 18), GRANTS the Trust's motion for summary judgment (Dkt. # 21), and DISMISSES this action with prejudice.

Dated this 26th day of September, 2018.

JAMES L. ROBART
United States District Judge